**E-FILED**
Monday, 07 July, 2008  04:22:14 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| WESTERN WORLD INSURANCE GROUP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No.  08-cv-2118 |
| vs. | ) |
| | ) Judge:  Michael P. McCuskey |
| SELECTIVE INSURANCE COMPANY OF | ) Magistrate:  David G. Bernthal |
| SOUTH CAROLINA AND MONTICELLO | ) |
| INSURANCE COMPANY N/K/A ALLIANZ | ) |
| GLOBAL RISK, U.S., | ) |
| | ) |
| Defendants. | ) |

**ALLIANZ GLOBAL RISKS US INSURANCE COMPANY'S ANSWER TO
WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT**

ALLIANZ GLOBAL RISKS US INSURANCE COMPANY ("Allianz") as successor-in-interest to certain policies issued by MONTICELLO INSURANCE COMPANY ("Monticello") at issue in this litigation, by and through its attorneys, BATES & CAREY LLP, submits the following Answer to WESTERN WORLD INSURANCE GROUP's ("Western World") Complaint for Declaratory Judgment, and hereby states as follows:

**JURISDICTION AND VENUE**

1.      This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201.

**ANSWER:**      **Allianz states that the allegations contained in Paragraph 1 call for a legal conclusion for which no response is required.**

2.      Western World Insurance Group (hereinafter "Western World") is an insurance company, duly organized under the laws of the State of New Hampshire, with its principal place of business in Franklin Lakes, New Jersey.  Western World is authorized to do business in the State of Illinois.

**ANSWER:** **Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2, and, therefore, denies the same.**

3.    Selective Insurance Company of South Carolina (hereinafter "Selective") is an insurance company, duly organized under the laws of the State of South Carolina, with its principal place of business in the State of North Carolina.  Selective is authorized to do business in the State of Illinois.

**ANSWER:** **Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3, and, therefore, denies the same.**

4.    Monticello Insurance Company, n/k/a Allianz Global Risk, U.S. [sic] (hereinafter "Monticello"), is an insurance company, duly organized under the laws of the State of Delaware, with its principal place of business in California.  Monticello is authorized to do business in the State of Illinois.

**ANSWER:** **Allianz Global Risks U.S. Insurance Company is a successor-in-interest to certain policies issued by Monticello that are at issue in this litigation.   Answering only for itself, Allianz states that it is an insurance company organized under the laws of the State of California, with its principal place of business in California.   Allianz lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 4, and, therefore, denies the same.**

5.    The amount in controversy herein exceeds $75,000.00.

**ANSWER:** **Allianz states that the allegations contained in Paragraph 5 call for a legal conclusion for which no response is required.  To the extent that a response is required, Allianz admits the allegations contained in Paragraph 5.**

6.     Jurisdiction in this Court is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

**ANSWER:     Allianz states that the allegations contained in Paragraph 6 call for a legal conclusion for which no response is required.   Allianz does not contest this Court's jurisdiction.**

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because all parties herein conduct business in the State of Illinois, and a substantial part of the events or omissions giving rise to this claim occurred in the Central District of Illinois.

**ANSWER:     Allianz states that the allegations contained in Paragraph 7 call for a legal conclusion for which no response is required.  Allianz does not contest venue in this Court.**

## THE UNDERLYING FACTS

8.     On July 6, 1986, Dyke and Karen Rhoads (hereinafter "the Rhoads") were murdered in their home in Paris, Illinois.

**ANSWER:     Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8, and, therefore, denies the same.**

9.     Detective James Parrish (hereinafter "Parrish") and Chief Gene Ray (hereinafter "Ray") of the City of Paris Police Department (hereinafter "the City of Paris") immediately opened an investigation into the Rhoads murders.

**ANSWER:     Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9, and, therefore, denies the same.**

10.     Parrish and Ray arrested Gordon Randy Steidl ("Steidl") and Herbert Whitlock ("Whitlock") for the Rhoads' murders.

**ANSWER:     Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10, and, therefore, denies the same.**

11.     Steidl and Whitlock were subsequently tried, convicted and sentenced to death for the Rhoads' murders.

**ANSWER:     Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11, and, therefore, denies the same.**

12.     On December 5, 2007, Steidl filed an eleven-count Complaint against the City of Paris, Ray, Parrish and others in the United States District Court for the Central District of Illinois, Urbana Division, under Cause No. 07-cv-02224 ("the *Steidl* lawsuit").  A true and accurate copy of the *Steidl* lawsuit is attached hereto as Exhibit A.

**ANSWER:     Allianz denies that Steidl filed a Complaint on December 5, 2007 under Cause No. 07-cv-02224.  According to the Court's docket, Steidl filed suit against the City of Paris, Ray, Parrish and others in the United States District Court for the Central District of Illinois, Urbana Division, under Cause No. 05-cv-02127 on or about May 27, 2005.  Additionally, Allianz states that the *Steidl* Complaint speaks for itself, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.**

13.     On February 27, 2008, Whitlock filed an eleven-count Complaint against the City of Paris, Ray, Parrish and others in the United States District Court for the Central District of Illinois, Urbana Division, under Cause No. 08-cv-02055 ("the *Whitlock* lawsuit").  A true and accurate copy of the *Whitlock* lawsuit is attached hereto as Exhibit B.

**ANSWER:     Allianz admits that according to the Court's docket, Whitlock filed a Complaint on February 27, 2008.  Additionally, Allianz states that the *Whitlock* Complaint speaks for itself, and Allianz otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.**

14.    The *Steidl* lawsuit alleges the following with regards to the City of Paris, Ray and/or Parrish:  1) Count I alleges a 42 U.S.C. § 1983 claim for false imprisonment against Ray and Parrish; 2) Count II alleges a 42 U.S.C. § 1983 claim for deprivation of right to fair trial and for wrongful conviction against Ray and Parrish; 3) Count III alleges a 42 U.S.C. § 1983 due process claim for deprivation of access to courts against Ray and Parrish; 4) Count IV alleges a 42 U.S.C. § 1983 *Monell* policy claim against the City of Paris; 5) Count V alleges false imprisonment against Ray and Parrish; 6) Count VI alleges malicious prosecution against Ray and Parrish; 7) Count VII alleges intentional infliction of emotional distress against Ray and Parrish; 8) Count VIII alleges conspiracy claim against Ray and Parrish; 9) Count IX alleges a *respondeat superior* claim against Ray and Parrish as employees of the City of Paris; and 10) Count X alleges 745 ILCS 10/9-102 and common law claims against the City of Paris.

**ANSWER:    Allianz states that the *Steidl* Complaint speaks for itself and Allianz denies any allegations in Paragraph 14 inconsistent with the *Steidl* Complaint.**

15.    The *Whitlock* lawsuit alleges the following with regards to the City of Paris, Ray and/or Parrish:  Count I alleges a 42 U.S.C. § 1984 [sic] claim for deprivation of right to fair trial, deprivation of due process and wrongful conviction against Ray and Parrish; Count II alleges a 42 U.S.C. § 1983 claim for malicious prosecution against Ray and Parrish; Count III alleges false imprisonment against Ray and Parrish; Count IV alleges a 42 U.S.C. § 1983 *Monell* policy claim against the City of Paris; Count V alleges a state law claim for false imprisonment against Ray and Parrish; Count VI alleges a state law claim for malicious prosecution against Ray and Parrish; Count VII alleges a state law claim for intentional infliction of emotional distress against Ray and Parrish; Count VIII alleges a state law claim for conspiracy against Ray

and Parrish; 9) Count IX alleges a state law respondesat [sic] superior claim against the City of

Paris; and Count X alleges 745 ILCS 10/9-102 and common law claims against the City of Paris.

**ANSWER:    Allianz states that the *Whitlock* Complaint speaks for itself and Allianz**

**denies any allegations in Paragraph 15 inconsistent with the *Whitlock* Complaint.**

16.    Both the *Steidl* and *Whitlock* lawsuits allege that the admissions to police and trial

testimony of two alleged eye witnesses – Darrel Herrington ("Herrington") and Deborah

Rienbolt ("Rienbolt") were manufactured, coerced, manipulated and knowingly false.

**ANSWER:    Allianz states that the *Steidl* and *Whitlock* Complaints speak for themselves**

**and Allianz denies any allegations in Paragraph 16 inconsistent with the *Steidl* and**

***Whitlock* Complaints.**

17.    Both the *Steidl* and *Whitlock* lawsuits allege that Parrish and Ray knew that the

admissions and trial testimony of Herrington and Rienbolt were manufactured, coerced,

manipulated and knowingly false, yet conducted their investigation, obtained arrest warrants for

Steidl and Whitlock and testified at Steidl and Whitlock's trials by relying upon these statements.

**ANSWER:    Allianz states that the *Steidl* and *Whitlock* Complaints speak for themselves**

**and Allianz denies any allegations in Paragraph 17 inconsistent with the *Steidl* and**

***Whitlock* Complaints.**

18.    Both the *Steidl* and *Whitlock* lawsuits allege that Parrish and Ray knowingly

suppressed exculpatory information from official police reports that would have exonerated

Steidl and Whitlock.

**ANSWER:    Allianz states that the *Steidl* and *Whitlock* lawsuits speak for themselves and**

**Allianz denies any allegations in Paragraph 18 inconsistent with the *Steidl* and *Whitlock***

**Complaints.**

19.    Both Steidl and Whitlock unsuccessfully sought relief from their alleged wrongful convictions from 1987 through 2003.

**ANSWER:    Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19, and, therefore, denies the same.**

20.    Both the *Steidl* and *Whitlock* lawsuits allege that part of the basis for the denial of such relief from 1987 to 2003 was the false testimony of Herrington and Rienbolt that was manufactured by Parrish and Ray, as well as the exculpatory evidence withheld by Parrish and Ray.

**ANSWER:    Allianz states that the *Steidl* and *Whitlock* Complaints speak for themselves and Allianz denies any allegations in Paragraph 20 inconsistent with the *Steidl* and *Whitlock* Complaints.**

21.    On June 17, 2003, the Federal District Court granted Steidl's petition for writ of *habeus corpus*, which had been filed on October 5, 2001, vacating Steidl's conviction and allowing the state 120 days to release or retry him.

**ANSWER:    Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21, and, therefore, denies the same.**

22.    On September 6, 2007, the Illinois Appellate Court for the Fourth District reversed Whitlock's conviction and judgment and remanded the case for a new trial.

**ANSWER:    Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22, and, therefore, denies the same.**

23.    On May 28, 2004, Steidl was released from custody.

**ANSWER:    Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23, and, therefore, denies the same.**

24.     On January 8, 2008, Whitlock was released from custody.

**ANSWER:     Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24, and, therefore, denies the same.**

### DEFENSE OF THE *STEIDL* AND *WHITLOCK* LAWSUITS

25.     The City of Paris, on its own behalf and on behalf of Parrish and Ray, tendered defense of the *Steidl* lawsuit to Western World, Selective and Monticello, its insurers that provided insurance coverage from 1987 through 2004.

**ANSWER:  Allianz denies that the City of Paris, on its own behalf and on behalf of Parrish and Ray, tendered defense of the *Steidl* lawsuit to Monticello.  Allianz lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 25, and, therefore, denies the same.**

26.     Selective agreed to defend the City of Paris for the *Steidl* lawsuit subject to a strict reservation of rights.  Selective denied coverage to Ray and Parrish.

**ANSWER:     Allianz admits that attorneys representing Selective wrote a letter to Monticello stating that Selective was defending the City of Paris and that Selective had denied coverage for Ray and Parrish.  Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26, and, therefore, denies the same.**

27.     Monticello and Western World agreed to defend the City of Paris, Parrish and Ray for the *Steidl* lawsuit subject to a strict reservation of rights.

**ANSWER:     Allianz admits only that Monticello agreed to defend the City of Paris, Parrish and Ray for the *Steidl* lawsuit subject to a reservation of rights.  Allianz lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27, and, therefore, denies the same.**

28.    Western World, Selective and Monticello all agreed to honor the City of Paris'
request to have Attorney James Sotos act as lead defense counsel for the City of Paris, Parrish
and Ray in the *Steidl* lawsuit.

**ANSWER:    Allianz admits only that Monticello agreed to honor the City of Paris'
request to have Attorney James Sotos act as lead defense counsel for the City of Paris in the
*Steidl* lawsuit.  Allianz lacks knowledge or information sufficient to form a belief as to the
truth of the remaining allegations of Paragraph 28, and, therefore, denies the same.**

29.    The City of Paris, Parrish and Ray have at all times been defended in the *Steidl*
lawsuit by independent counsel of their own choosing.

**ANSWER:    Admitted.**

30.    Western World, Selective and Monticello initially entered into an informal
agreement to equally fund the defense of the City of Paris, Parrish and Ray in the *Steidl* lawsuit.

**ANSWER:    Answering only for itself, Allianz states that any agreement to defend the
City of Paris, Parrish and Ray in the *Steidl* lawsuit pursuant to the Monticello policies is set
forth in certain correspondence among Monticello and Western World, Selective, and
counsel for the City of Paris, Parrish and Ray, and that correspondence speaks for itself.
Allianz denies any allegations in Paragraph 30 that are inconsistent with that
correspondence.  To the extent a further response is required, Allianz denies the allegations
of Paragraph 30.**

31.    On April 3, 2007, Western World sent correspondence to Selective and
Monticello, with a carbon-copy to independent counsel for the City of Paris, Parrish and Ray,
indicating Western World's withdrawal from the informal funding agreement based upon

Western World's position as an excess carrier.  A true and accurate copy of the April 3, 2007 correspondence is attached hereto, made a part hereof and marked as Exhibit B.

**ANSWER:    Allianz states that Western World issued a later dated April 3, 2007 and that the correspondence referenced in Paragraph 31 speaks for itself.  Allianz denies any allegations in Paragraph 31 that are inconsistent with that correspondence.**

32.    In the April 3, 2007 correspondence, Western World asked that the parties continue to submit reports of the *Steidl* lawsuit to Western World as an excess carrier.

**ANSWER:    Allianz states that the correspondence referenced in Paragraph 32 speaks for itself.  Allianz denies any allegations in Paragraph 32 that are inconsistent with that correspondence.**

**THE VARIOUS INSURANCE POLICIES**

33.    Western World issued certain Law Enforcement Officers Liability insurance policies to the City of Paris, Illinois, Paris Police Department as named insured.

**ANSWER:    Allianz states that the Western World policies speak for themselves, and denies any allegations in Paragraph 33 that are inconsistent with those policies.**

34.    **Western World's complaint does not contain Paragraph 34, therefore no response is necessary.**

35.    Western World issued Policy No. LEL11749, effective December 27, 1985 through December 17, 1986.

**ANSWER:    Allianz states that the Western World policy speaks for itself, and denies any allegations in Paragraph 35 that are inconsistent with that policy.  To the extent a further response is required, Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35, and, therefore, denies the same.**

36. Western World issued subsequent policies with identical insuring agreements to the City of Paris Police Department on an annual basis through January 12, 1994, under policy nos LEL 12711; LEL 12731; and LEL 12753 (hereinafter "the earlier Western World policies"). A true and accurate copy of the insuring agreement for the earlier Western World policies is attached hereto as Exhibit C.

**ANSWER:** **Allianz states that the Western World policies speak for themselves, and denies any allegations in Paragraph 36 that are inconsistent with those policies. To the extent a further response is required, Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36, and, therefore, denies the same.**

37. The earlier Western World policies identically provide, in pertinent part, as follows

### INSURING AGREEMENTS

The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of negligent acts, errors or omissions of the Insured as follows:

Coverage A – Personal Injury
Coverage B   Bodily Injury

\*      \*      \*

to which this policy applies, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or bodily injury, even if any allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall be obligated to pay nay [sic] claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

\*      \*      \*

### CONDITIONS

*        *        *

**D.    OTHER INSURANCE**

The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise.

**ANSWER:    Allianz states that the Western World policies speak for themselves, and denies any allegations in Paragraph 37 that are inconsistent with those policies.  To the extent a further response is required, Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37, and, therefore, denies the same.**

38.    Western World subsequently provided the City of Paris Police Department with Law Enforcement Officers Liability insurance under policy no NLE02201, effective annually from January 12, 1994 through January 12, 1996 (hereinafter "the later Western World policies").  A true and accurate copy of the insuring agreement for the later Western World policies is attached hereto as Exhibit D.

**ANSWER:    Allianz states that the Western World policies speak for themselves, and denies any allegations in Paragraph 38 that are inconsistent with those policies.  To the extent a further response is required, Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38, and, therefore, denies the same.**

39.    The later Western World policies identically provide, in pertinent part, as follows:

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover as a "law enforcement incident," our obligations are limited as follows:

*       *       *

      b.      If the other insurance available to you was not issued by us, the insurance available under this policy shall be excess insurance over any other valid and collectible insurance available to the insured

**ANSWER:**   **Allianz states that the Western World policies speak for themselves, and denies any allegations in Paragraph 39 that are inconsistent with those policies. To the extent a further response is required, Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39, and, therefore, denies the same.**

40.     Monticello provided police professional liability coverage to City of Paris as named insured on an annual basis from December 27, 1995 to December 27, 1999 ("the Monticello policies"). Upon information and belief, a true and accurate copy of the Monticello policy effective during this time frame is attached hereto as Exhibit E.

**ANSWER:**   **Allianz admits only that Monticello issued certain insurance policies and that those policies speak for themselves. Allianz denies any allegations in Paragraph 40 that are inconsistent with those policies. As of the date of this filing, Allianz has been unable to locate a complete copy of the Monticello policies. Therefore, although it continues to search its files and archives for a complete copy of the Monticello policies, Allianz denies knowledge or information sufficient to form a belief as to whether Exhibit E is a true and accurate copy of the Monticello policies.**

41.     Upon information and belief, the Monticello policies effective during this time frame identically provide, in pertinent part, as follows

**COVERAGE B.  PERSONAL INJURY LIABILITY**

1.    **Insuring Agreement.**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" to which this insurance applies. The "personal injury" must be caused by an "occurrence" and arise out of the performance of the insured's law enforcement duties.

*        *        *

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we defend:

1.    All expenses we incur.

*        *        *

3.    All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit"…

*        *        *

These payments will not reduce the limits of insurance.

*        *        *

**SECTION IV – CONDITIONS**

*        *        *

4.    **Other Insurance.**

   a.    The Insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of our liability under this policy shall no [sic] be reduced by the existence of such other insurance.

**ANSWER:**    Allianz admits only that Monticello issued certain insurance policies and that those policies speak for themselves. Allianz denies any allegations in Paragraph 40 that are inconsistent with those policies. As of the date of this filing, Allianz has been unable to

14

**locate a complete copy of the Monticello policies.  Therefore, although it continues to search its files and archives for a complete copy of the Monticello policies, Allianz denies knowledge or information sufficient to form a belief as to whether the language quoted in Paragraph 41 is contained in the Monticello policies.**

42.    Selective provided police professional liability insurance coverage to City of Paris as named insured, effective annually from December 27, 1999 through December 27, 2005 ("the Selective policies").  Upon information and belief, a true and accurate copy of the Selective policy effective during this time frame is attached hereto as Exhibit F.

**ANSWER:    Allianz states only that Selective issued certain insurance policies and that the Selective policies speak for themselves.  Allianz denies any allegations in Paragraph 42 that are inconsistent with those policies.  To the extent a further response is required, Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42, and, therefore, denies the same.**

43.    Upon information and belief, the Selective policies effective during this time frame identically provide, in pertinent part, as follows

### COVERAGE B.  PERSONAL INJURY LIABILITY

1.    **Insuring Agreement.**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" to which this insurance applies.   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

*          *          *

### SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1.    All expenses we incur.

\*        \*        \*

3.    All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit"

\*        \*        \*

These payments will not reduce the Limits of Insurance.

\*        \*        \*

**SECTION IV – POLICE PROFESSIONAL LIABILITY CONDITIONS**

\*        \*        \*

**4.    Other Insurance.**

a.    The Insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance.  When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of our liability under this policy shall not be reduced by the existence of such other insurance.

**ANSWER:    Allianz states only that Selective issued certain insurance policies and that the Selective policies speak for themselves.  Allianz denies any allegations in Paragraph 43 that are inconsistent with those policies.  To the extent a further response is required, Allianz lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43, and, therefore, denies the same.**

**Count I**

44.    Western World adopts and repeats the allegations of Paragraphs 1 through 43 as and for Paragraph 44 hereof and as though the same were fully set forth herein.

**ANSWER:    Allianz repeats and incorporates its responses to Paragraphs 1 through 43 as though fully set forth herein.**

16

45.    The *Steidl* and *Whitlock* lawsuits allege a single tortious act continuing in successive policy periods insured by Western World, Selective and Monticello.

**ANSWER:    Allianz states that the complaints in the *Steidl* and *Whitlock* lawsuits speak for themselves and Allianz denies any allegations in Paragraph 45 that are inconsistent therewith.    Allianz further states that the characterization of the allegations in those complaints is a legal conclusion to which no response is required.**

46.    The risk insured by the Western World policies and triggered by the *Steidl* and *Whitlock* lawsuits is also covered by the Selective and Monticello policies.

**ANSWER:    Allianz admits that Western World recognizes that the *Steidl* and *Whitlock* lawsuits trigger coverage under the Western World policies.    Answering further, Allianz states that the allegations contained in Paragraph 46 call for a legal conclusion for which no response is required.    Allianz further states that the Western World, Selective and Monticello policies are not identical, that each policy speaks for itself, and Allianz denies any allegations in Paragraph 46 that are inconsistent with those policies.**

47.    The Selective and Monticello policies provide primary coverage for the defense of the City of Paris, Parrish and Ray in the *Steidl* and *Whitlock* lawsuits.

**ANSWER:    Allianz states that the allegations contained in Paragraph 47 are a legal conclusion for which no response is required.    Allianz further states that the Selective and Monticello policies speak for themselves, and Allianz denies any allegations in Paragraph 47 that are inconsistent with those policies.    To the extent a further response is required, speaking only for the Allianz policies, Allianz has reserved the right to deny coverage for the *Steidl* and *Whitlock* lawsuits.    Allianz lacks knowledge or information sufficient to form**

a belief as to the truth of the remaining allegations of Paragraph 47, and, therefore, denies the same.

48.    The Western World policies provide excess coverage over the Selective and Monticello policies for the defense of the City of Paris, Parrish and Ray in the *Steidl* and *Whitlock* lawsuits.

**ANSWER:    Allianz states that the allegations contained in Paragraph 48 call for a legal conclusion for which no response is required.  Allianz further states that the Western World policies speak for themselves, and denies any allegations in Paragraph 48 that are inconsistent with those policies.  To the extent a further response is required, Allianz denies the allegations of Paragraph 48.**

49.    By agreeing to fund independent counsel for the City of Paris, Parrish and Ray to defend the *Steidl* lawsuit, Selective and Monticello agreed to pay all defense costs, not just the defense costs arising out of damages that occurred during the Selective or Monticello policy periods.

**ANSWER:    Answering only for itself, Allianz states that any agreement to defend the City of Paris, Parrish and Ray in the *Steidl* lawsuit pursuant to the Monticello policies is set forth in certain correspondence among Monticello, Western World, Selective, and counsel for the City of Paris, Parrish and Ray, and that correspondence speaks for itself.  Allianz denies any allegations in Paragraph 49 that are inconsistent with that correspondence.  To the extent a further response is required, Allianz denies the allegations of Paragraph 49.**

50.    Western World does not seek to abrogate its obligations to the City of Paris, Parrish or Ray upon exhaustion of the limits of liability under the Selective and Monticello policies, except as previously set forth in its reservation of rights letter.

**ANSWER:**    Allianz lacks knowledge or information sufficient to form a belief as to the Western World's intent, but denies that is it fulfilling its obligations to City of Paris, Parrish or Ray.

51.    The above contentions of Western World are, on information and belief, denied by Selective and Monticello, which, in turn, contend that Western World owes primary coverage for the *Steidl* and *Whitlock* lawsuits.  Western World, in turn, denies the contrary contentions of Selective and Monticello on each of them.

**ANSWER:**    Answering only for itself, Allianz states that the policies issued by Monticello, Western World, and Selective, as well as certain correspondence issued by Monticello, Western World, and Selective with regard to coverage for the *Steidl* and *Whitlock* lawsuits, speak for themselves.  Allianz denies any allegations in Paragraph 51 that are inconsistent with those policies and correspondence.  To the extent a further response is required, Allianz denies the allegations of Paragraph 51.

**AFFIRMATIVE DEFENSES**

For its affirmative defenses, Allianz states as follows:

**First Affirmative Defense**

To the extent that coverage may be afforded by one or more of the Monticello policies, the amount on indemnity owed to the City, Parrish and Ray, if any, should be allocated to all years implicated by the *Steidl* and *Whitlock* lawsuits and Allianz's liability should be reduced proportionately.

**Second Affirmative Defense**

The obligations of Allianz, if any obligations exist, are defined, limited, and controlled by the terms of the Monticello policies including, but not limited to, the coverages therein, the limits, exclusions, endorsements and conditions, along with all other terms said forth therein.

### Third Affirmative Defense

There is no coverage afforded by the Monticello policies for damages and/or defense costs to the extent that the claims for which coverage is being sought under the Monticello policies are asserted against persons or entities that were not insureds under the Monticello policies at the time of the actions complained of in the *Steidl* and *Whitlock* lawsuits.

### Fourth Affirmative Defense

There is no coverage afforded by the Monticello policies for damages and/or defense costs to the extent that the claims for which coverage is being sought under the Monticello policies do not allege "bodily injury", "property damage" or "personal injury" as those terms are defined in the Monticello policies.

### Fifth Affirmative Defense

There is no coverage afforded by the Monticello policies for damages and/or defense costs to the extent that the claims for which coverage is being sought under the Monticello policies seek coverage for "bodily injury", "property damage" or "personal injury" which did not take place during the policy period of the Monticello policies.

### Sixth Affirmative Defense

There is no coverage afforded by the Monticello policies for damages and/or defense costs to the extent that the claims for which coverage is being sought under the Monticello policies do not allege "bodily injury", "property damage" or "personal injury" caused by an "occurrence," as defined in the Monticello Policies, and arising out of the performance of the insureds' law enforcement duties.

### Seventh Affirmative Defense

There is no coverage afforded by the Monticello policies for damages and/or defense costs for any claims for coverage under Coverage A of the Monticello Policies, to the extent that coverage is otherwise excluded.

### Eighth Affirmative Defense

There is no coverage afforded by the Monticello policies for damages and/or defense costs for any claims for coverage under Coverage B of the Monticello Policies, to the extent that coverage is otherwise excluded.

### Ninth Affirmative Defense

The Monticello policies provide that when both the insurance afforded by the Monticello policies and any other insurance apply to a loss on the same basis, whether primary, excess or contingent, Monticello shall not be liable under the Monticello policies for a greater proportion of the loss than that stated in the applicable method of sharing provision in the Monticello policies.  Accordingly, any coverage available to the insureds under the Monticello policies for the *Steidl* and *Whitlock* lawsuits is subject to pro rata allocation based on the method set forth in the Monticello policies.

### Tenth Affirmative Defense

To the extent that Exhibit E is not a complete and accurate copy of the Monticello policies, no coverage is available for the *Steidl* and *Whitlock* lawsuits under the Monticello policies.

### Eleventh Affirmative Defense

Some or all of the claims for coverage under the Monticello policies may be barred in whole or in part by the doctrine of unclean hands.

WHEREFORE, Defendant Allianz requests this Court enter judgment in favor of Allianz and against Plaintiff Western World, dismiss Western World's complaint with prejudice as to Allianz, and award Allianz any other relief that this Court deems appropriate and equitable.

Date:   July 7, 2008

                    Respectfully submitted,

                    ALLIANZ GLOBAL RISKS US INSURANCE COMPANY

                    By:   _Joseph Pozen_____
                         Counsel for Allianz

Scott L. Carey
Joseph P. Pozen
Alicia Jaeger Smith
David M. Alt
BATES & CAREY LLP
191 N. Wacker Drive
Suite 2400
Chicago, IL  60606
Telephone:   (312) 762-3100
Facsimile:   (312) 762-3200

## CERTIFICATE OF SERVICE

I, Joseph P. Pozen, hereby certify that on July 7, 2008, I electronically filed the above document(s) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Attorneys for Selective Insurance Company of South Carolina*

Nancy K. Tordai
HANSON PETERS NYE
1000 Hart Road, Suite 300
Barrington, IL 60010
Telephone: (847) 277-8104
Facsimile: (847) 277-7339
E-mail: nancytordai@hpnlaw.com

*Attorneys for Western World Ins. Group*

Glenn F. Fencl
Richard Gordon
JOHNSON & BELL, LTD.
33 W. Monroe St., Ste. 2700
Chicago, IL 60603
Telephone: (312) 984-6685
Facsimile: (312) 372-9818
E-mail: fenclg@jbltd.com
E-mail: gordonr@jbltd.com

s/ _Joseph Pozen_
Joseph P. Pozen (Illinois No.: 6269236)
*Attorney for Defendant, Allianz Global Risks US Insurance Company*
Bates & Carey LLP
191 N. Wacker Drive
Suite 2400
Telephone: (312) 762-3100
Facsimile: (312) 762-3200
E-mail: jpozen@batescarey.com

258303