**E-FILED**
Friday, 11 July, 2008  10:45:08 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| WESTERN WORLD INSURANCE GROUP,<br>      Plaintiff<br><br>                    vs.<br><br>SELECTIVE INSURANCE COMPANY OF<br>SOUTH CAROLINA AND MONTICELLO<br>INSURANCE COMPANY, N/K/A ALLIANZ<br>GLOBAL RISK, U.S.<br>      Defendants | No. 08-2118<br>Judge:  Michael P. McCuskey<br>Magistrate:  David G. Bernthal |

## ANSWER

The Defendant, Selective Insurance Company of South Carolina ("Selective"), by and through its counsel, for its Answer to the Complaint for Declaratory Judgment of Western World, states:

### JURISDICTION AND VENUE

1.      This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201.

Answer:  Paragraph 1 consists of a description of the nature of the proceeding, and hence consists of conclusions of law to which no answer is required.

2.      Western World Insurance Group (hereinafter "Western World") is an insurance company, duly organized under the laws of the State of New Hampshire, with its principal place of business in Franklin Lakes, New Jersey. Western World is authorized to do business in the State of Illinois.

Answer:  Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 and therefore demands strict proof thereof.

3.      Selective Insurance Company of South Carolina (hereinafter "Selective") is an insurance company, duly organized under the laws of the State of South Carolina, with its principal place of business in the State of North Carolina. Selective is authorized to do business in the State of Illinois.

Answer:  Selective admits the allegations of paragraph 3.

4.      Monticello Insurance Company, n/k/a Allianz Global Risk, U.S. (sic) (hereinafter "Monticello"), is an insurance company, duly organized under the laws of the State of Delaware, with its principal place of business in California. Monticello is authorized to do business in the State of Illinois.

Answer:  Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4 and therefore demands strict proof thereof.

5.      The amount in controversy herein exceeds $75,000.00.

Answer:  Selective admits the allegations of paragraph 5.

6.      Jurisdiction in this Court is founded upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(l).

Answer:  Selective admits the allegations of paragraph 6.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because all parties herein conduct business in the State of Illinois, and a substantial part of the events or omissions giving rise to this claim occurred in the Central District of Illinois.

Answer:  Selective admits the allegations of paragraph 7.

THE UNDERLYING FACTS

8.      On July 6, 1986, Dyke and Karen Rhoads (hereinafter "the Rhoads") were murdered in their home in Paris, Illinois.

Answer:  Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 and therefore denies those allegations.

9.    Detective James Parrish (hereinafter "Parrish") and Chief Gene Ray (hereinafter "Ray") of the City of Paris Police Department (hereinafter "the City of Paris") immediately opened an investigation into the Rhoads murders.

Answer:  Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 and therefore denies those allegations.

10.    Parrish and Ray arrested Gordon Randy Steidl ("Steidl") and Herbert Whitlock ("Whitlock") for the Rhoads' murders.

Answer:  Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 and therefore denies those allegations.

11.    Steidl and Whitlock were subsequently tried, convicted and sentenced to death for the Rhoads' murders.

Answer:  Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 and therefore denies those allegations.

12.    On December 5, 2007, Steidl filed an eleven-count Complaint against the City of Paris, Ray, Parrish and others in the United States District Court for the Central District of Illinois, Urbana Division, under Cause No. 07-cv-02224 ("the Steidl lawsuit"). A true and accurate copy of the Steidl lawsuit is attached hereto as Exhibit A.

Answer:  Selective denies the allegations of paragraph 12 and states that Steidl filed a complaint against the City of Paris, et al., in the United States District Court for the Central District of Illinois, Case Number 05-cv-02127, on May 27, 2005.  Further answering, Selective states that the Steidl Complaint speaks for itself and denies all allegations inconsistent therewith.

13.     On February 27, 2008, Whitlock filed an eleven-count Complaint against the City of Paris, Ray, Parrish and others in the United States District Court for the Central District of Illinois, Urbana Division, under Cause No. 08-cv-02055 ("the Whitlock lawsuit"). A true and accurate copy of the Whitlock lawsuit is attached hereto as Exhibit B.

Answer:  Selective admits that Whitlock filed a Complaint against the City of Paris, Ray, Parrish and others in the United States District Court for the Central District of Illinois on February 27, 2008, court number 08-cv-02055.  Selective states that the Whitlock Complaint speaks for itself and denies all allegations of paragraph 13 that are inconsistent therewith.

14.     The Steidl lawsuit alleges the following with regards to the City of Paris, Ray and/or Parrish: 1) Count I alleges a 42 U.S.C. § 1983 claim for false imprisonment against Ray and Parrish; 2) Count II alleges a 42 U.S.C. § 1983 claim for deprivation of right to fair trial and for wrongful conviction against Ray and Parrish; 3) Count III alleges a 42 U.S.C. § 1983 due process claim for deprivation of access to courts against Ray and Parrish; 4) Count IV alleges a 42 U.S.C. § 1983 Monell policy claim against the City of Paris; 5) Count V alleges false imprisonment against Ray and Parrish; 6) Count VI alleges malicious prosecution against Ray and Parrish; 7) Count VII alleges intentional infliction of emotional distress against Ray and Parrish; 8) Count VIII  alleges conspiracy claim against Ray and Parrish; 9) Count IX alleges a respondeat superior claim against Ray and Parrish as employees of the City of Paris; and 10) Count X alleges 745 ILCS 10/9-102 and common law claims against the City of Paris.

Answer:  The *Steidl* lawsuit speaks for itself and Selective denies all allegations of paragraph 14 that are inconsistent therewith.

15.     The Whitlock lawsuit alleges the following with regards to the City of Paris, Ray and/or Parrish: Count i alleges a 42 U.S.C. § 1984 (sic) claim for deprivation of right to fair

4

trial, deprivation of due process and wrongful conviction against Ray and Parrish; Count II alleges a 42 U.S.C. § 1983 claim for malicious prosecution against Ray and Parrish; Count III alleges false imprisonment against Ray and Parrish; Count IV alleges a 42 U.S.C. § 1983 Monell policy claim against the City of Paris; Count V alleges a state law claim for false imprisonment against Ray and Parrish; Count VI alleges a state law claim for malicious prosecution against Ray and Parrish; Count VII alleges a state law claim for intentional infliction of emotional distress against Ray and Parrish; Count VIII alleges a state law claim for conspiracy against Ray and Parrish; Count IX alleges a state law respondeat superior claim against the City of Paris; and Count X alleges 745 ILCS 10/9- 102 and common law claims against the City of Paris.

Answer:  The *Whitlock* lawsuit speaks for itself and Selective therefore denies the allegations of paragraph 15.

16.     Both the Steidl and Whitlock lawsuits allege that the admissions to police and trial testimony of two alleged eye witnesses - Darrel Herrington ("Herrington") and Deborah Rienbolt ("Rienbolt") were manufactured, coerced, manipulated and knowingly false.

Answer:  The *Steidl* and *Whitlock* lawsuits speak for themselves and Selective therefore denies the allegations of paragraph 16.

17.     Both the Steidl and Whitlock lawsuits allege that Parrish and Ray knew that the admissions and trial testimony of Herrington and Rienbolt were manufactured, coerced, manipulated and knowingly false, yet conducted their investigation, obtained arrest warrants for Steidl and Whitlock and testified at Steidl and Whitlock's trials by relying upon these statements.

Answer:  The *Steidl* and *Whitlock* lawsuits speak for themselves and Selective therefore denies the allegations of paragraph 17.

18.    Both the Steidl and Whitlock lawsuits allege that Parrish and Ray knowingly suppressed exculpatory information from official police reports that would have exonerated Steidl and Whitlock.

Answer:  The *Steidl* and *Whitlock* lawsuits speak for themselves and Selective therefore denies the allegations of paragraph 18.

19.    Both Steidl and Whitlock unsuccessfully sought relief from their alleged wrongful convictions from 1987 through 2003.

Answer:  Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 and therefore denies those allegations.

20.    Both the Steidl and Whitlock lawsuits allege that part of the basis for the denial of such relief from 1987 to 2003 was the false testimony of Herrington and Rienbolt that was manufactured by Parrish and Ray, as well as the exculpatory evidence withheld by Parrish and Ray.

Answer:  The *Steidl* and *Whitlock* lawsuits speak for themselves and Selective therefore denies the allegations of paragraph 20.

21.    On June 17, 2003, the Federal District Court granted Steidl's petition for writ of habeus corpus, which had been filed on October 5, 2001, vacating Steidl's conviction and allowing the state 120 days to release or retry him.

Answer:  Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 and therefore denies those allegations.

22.    On September 6, 2007, the Illinois Appellate Court for the Fourth District reversed Whitlock's conviction and judgment and remanded the case for a new trial.

Answer: Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and therefore denies those allegations.

23.     On May 28, 2004, Steidl was released from custody.

Answer: Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 and therefore denies those allegations.

24.     On January 8, 2008, Whitlock was released from custody.

Answer: Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and therefore denies those allegations.

DEFENSE OF THE STEIDL AND WHITLOCK LAWSUITS

25.     The City of Paris, on its own behalf and on behalf of Parrish and Ray, tendered defense of the Steidl lawsuit to Western World, Selective and Monticello, its insurers that provided insurance coverage from 1987 through 2004.

Answer: Selective admits that the City of Paris tendered defense of the *Steidl* lawsuit to Selective. Selective denies that the City of Paris tendered defense of the *Stedil* lawsuit on behalf of Parrish and Ray to Selective. Selective is without knowledge or information sufficient to form a belief as to the truth of the allegation that the City of Paris tendered defense of the *Steidl* lawsuit on behalf of Ray and Parrish to Western World and Monticello and therefore denies those allegations. Selective denies that it provided insurance coverage from 1987 through 2004.

Further answering, Plaintiff, Selective, admits that it issued Commercial Policies of Insurance to the City of Paris Selective, Policy No. S1698558, for the following Policy Periods: December 27, 1999 to December 27, 2000; December 27, 2000 to December 27, 2001; December 27, 2001 to December 2002; December 27, 2002 to December 27, 2003; December 27, 2003 to December 27, 2004; December 27, 2004 to December 27, 2005; December 27, 2005

to December 27, 2006; and December 27, 2006 to December 27, 2007. Selective also issued to the City of Paris a Police Professional Liability Policy number S1319297 for the December 27, 1999 to December 27, 2000 policy period. Selective also issued to the City of Paris a Public Officials Liability Policy, Policy S1698558, for the following Policy Period: December 27, 2004 to December 27, 2005. (The foregoing policies shall be collectively referred to herein as the "Selective Policies").

Selective lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 25 and therefore denies the same.

26.    Selective agreed to defend the City of Paris for the Steidl lawsuit subject to a strict reservation of rights. Selective further admits that it denied coverage to Ray and Parrish.

Answer:  Selective admits it agreed to defend the City of Paris for the *Steidl* lawsuit subject to a strict reservation of rights and that it denies and continues to deny that it owes any obligation to defend or indemnify the City of Paris for the *Steidl* lawsuit. Selective admits that it denied coverage to Ray and Parrish and further affirmatively states that it agreed to advance the payment of defense costs incurred by Ray and Parrish in their defense of the *Steidl* lawsuit subject to a strict reservation of rights, and further states that it denied and continues to deny that it owes any duty to defend or indemnify Ray and Parrish for the *Steidl* lawsuit.

27.    Monticello and Western World agreed to defend the City of Paris, Parrish and Ray for the Steidl lawsuit subject to a strict reservation of rights.

Answer:  Selective admits the allegations of paragraph 27.

28.    Western World, Selective and Monticello all agreed to honor the City of Paris' request to have Attorney James Sotos act as lead defense counsel for the City of Paris, Parrish and Ray in the Steidl lawsuit.

8

Answer:  Selective admits the allegations of paragraph 28 as they relate to Selective. Selective is without knowledge or information sufficient to form a belief as to the truth of the allegation that Western World and Monticello agreed to honor the City of Paris' request to have Attorney James Sotos act as lead defense counsel for the City of Paris, Parrish and Ray in the *Steidl* lawsuit and therefore denies the same.

29. The City of Paris, Parrish and Ray have at all times been defended in the Steidl lawsuit by independent counsel of their own choosing.

Answer:  Selective admits the allegations of paragraph 29 as they relate to Selective. Selective is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 as they relate to Western World and Monticello and therefore denies the same.

30.     Western World, Selective and Monticello initially entered into an informal agreement to equally fund the defense of the City of Paris, Parrish and Ray in the Steidl lawsuit.

Answer:  Selective admits that Selective, Western World and Monticello agreed to equally fund the defense of the City of Paris, Parrish and Ray in the Steidl lawsuit.  Selective states that its agreement to do so was subject to a strict reservation of rights.  Selective denies all remaining allegations of paragraph 30.

31.     On April 3, 2007, Western World sent correspondence to Selective and Monticello, with a carbon-copy to independent counsel for the City of Paris, Parrish and Ray, indicating Western World's withdrawal from the informal funding agreement based upon Western World's position as an excess carrier. A true and accurate copy of the April 3, 2007 correspondence is attached hereto, made a part hereof and marked as Exhibit B.

Answer:  Selective admits that Western World sent correspondence that was dated April 3, 2007, which correspondence speaks for itself and Selective denies all allegations of paragraph 31 inconsistent therewith.  Selective denies that Exhibit B is a copy of that correspondence.

32.      In the April 3, 2007 correspondence, Western World asked that the parties continue to submit reports of the Steidl lawsuit to Western World as an excess carrier.

Answer:  Selective states that the April 3, 2007 correspondence speaks for itself and therefore denies the allegations of paragraph 32 that are inconsistent therewith.  Selective denies that Western World is an excess carrier, and Selective otherwise denies all remaining allegations of paragraph 32.

THE VARIOUS INSURANCE POLICIES

33.      Western World issued certain Law Enforcement Officers Liability insurance policies to the City of Paris, Illinois, Paris Police Department as named insured.

Answer:  Selective states that the Western World policies speak for themselves and denies all allegations of paragraph 33 that are inconsistent therewith.

34.      Western World's complaint does not contain Paragraph 34, therefore no response is necessary.

35.      Western World issued Policy No. LEL11749, effective December 27, 1985 through December 17, 1986.

Answer:  Selective states that the Western World policies speak for themselves and denies all allegations of paragraph 35 that are inconsistent therewith.  Selective is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 35, and denies the same.

36.    Western World issued subsequent policies with identical insuring agreements to the City of Paris Police Department on an annual basis through January 12, 1994, under policy nos LEL 12711; LEL 12731; and LEL 12753 (hereinafter "the earlier Western World policies"). A true and accurate copy of the insuring agreement for the earlier Western World policies is attached hereto as Exhibit C.

Answer:  Selective states that the Western World policies speak for themselves and denies all allegations of paragraph 36 that are inconsistent therewith.  Selective is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 36, and therefore denies the same.

37.    The earlier Western World policies identically provide, in pertinent part, as follows

INSURING AGREEMENTS
The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of negligent acts, errors or omissions of the Insured as follows:
Coverage A - Personal Injury
Coverage B Bodily Injury
* * *
to which this policy applies, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or bodily injury, even if any allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall be obligated to pay nay (sic) claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
* * *
CONDITIONS
* * *
D. OTHER INSURANCE
The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise.

11

Answer:  The Western World policies speak for themselves, and Selective denies all allegations of paragraph 37 that are inconsistent therewith.  To the extent any further answer is required, Selective states that it lacks knowledge or information sufficient to form a belief of the truth of the allegations of paragraph 37 and therefore denies the same.

38.     Western World subsequently provided the City of Paris Police Department with Law Enforcement Officers Liability insurance under policy no NLE02201, effective annually from January 12, 1994 through January 12, 1996 (hereinafter "the later Western World policies"). A true and accurate copy of the insuring agreement for the later Western World policies is attached hereto as Exhibit D.

Answer:  The Western World policies speak for themselves, and Selective denies all allegations of paragraph 38 that are inconsistent therewith.  To the extent any further answer is required, Selective states that it lacks knowledge or information sufficient to form a belief of the truth of the allegations of paragraph 38 and therefore denies the same.

39.     The later Western World policies identically provide, in pertinent part, as follows:

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover as a "law enforcement incident," our obligations are limited as follows:
* * *

b. If the other insurance available to you was not issued by us, the insurance available under this policy shall be excess insurance over any other valid and collectible insurance available to the insured

Answer:  The Western World policies speak for themselves, and Selective denies all allegations of paragraph 39 that are inconsistent therewith.  To the extent any further answer is required, Selective states that it lacks knowledge or information sufficient to form a belief of the truth of the allegations of paragraph 39 and therefore denies the same.

40.     Monticello provided police professional liability coverage to City of Paris as named insured on an annual basis from December 27, 1995 to December 27, 1999 ("the Monticello policies"). Upon information and belief, a true and accurate copy of the Monticello policy effective during this time frame is attached hereto as Exhibit E.

Answer:  The Monticello policies speak for themselves and Selective denies all allegations of paragraph 40 that are inconsistent therewith.  To the extent any further answer is required, Selective states that it lacks knowledge or information sufficient to form a belief of the truth of the allegations of paragraph 40 and therefore denies the same.

41.     Upon information and belief, the Monticello policies effective during this time frame identically provide, in pertinent part, as follows

COVERAGE B. PERSONAL INJURY LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" to which this insurance applies. The "personal injury" must be caused by an "occurrence" and arise out of the performance of the insured's law enforcement duties.

* * *

SUPPLEMENT ARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

* * *

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit". . .

* * *

These payments will not reduce the limits of insurance.

* * *

SECTION IV - CONDITIONS

* * *

4. Other Insurance.

a. The Insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of our liability under this policy shall no (sic) be reduced by the existence of such other insurance.

Answer:  The Monticello policies speak for themselves and Selective denies all allegations of paragraph 41 that are inconsistent therewith.  To the extent any further answer is required, Selective states that it lacks knowledge or information sufficient to form a belief of the truth of the allegations of paragraph 41 and therefore denies the same.

42.    Selective provided police professional liability insurance coverage to City of Paris as named insured, effective annually from December 27, 1999 through December 27, 2005 ("the Selective policies"). Upon information and belief, a true and accurate copy of the Selective policy effective during this time frame is attached hereto as Exhibit F.

Answer:  Selective admits that it issued police professional liability insurance coverage to the City of Paris for the policy periods of December 27, 1999 to December 27, 2000, December 27, 2000 to December 27, 2001, December 27, 2001 to December 27, 2002, December 27, 2002 to December 27, 2003, December 27, 2003 to December 27, 2004, December 27, 2004 to December 27, 2005, and states that the Selective police professional liability coverage policies speak for themselves and denies all allegations of paragraph 42 that are  inconsistent therewith. Selective further denies that Exhibit F is a true and correct copy of the Selective policy professional liability insurance coverage policy.  Further answering, Selective denies that the

Selective policies provide coverage for the Steidl and Whitlock litigation and denies any

obligation to defend or indemnify the City of Paris, Ray and Parrish for the Steidl and Whitlock

litigation.

43.     Upon information and belief, the Selective policies effective during this time

frame identically provide, in pertinent part, as follows

COVERAGE B. PERSONAL INJURY LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages
because of "personal injury" to which this insurance applies. No other obligation or
liability to pay sums or perform acts or services is covered unless explicitly provided for
under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

* * *

SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

* * *

3. All reasonable expenses incurred by the insured at our request to assist us in the
investigation or defense of the claim or "suit"

* * *

These payments will not reduce the Limits of Insurance.

* * *

SECTION IV - POLICE PROFESSIONAL LIABILITY CONDITIONS

* * *

4. Other Insurance.

a. The Insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of our liability under this policy shall not be reduced by the existence of such other insurance.

Answer:  Selective states that the Selective Policies speak for themselves and therefore denies all allegations of paragraph 43 that are inconsistent therewith.  Selective further states that the Selective Policies are to be construed as a whole, and therefore denies the allegations of paragraph 43.

COUNT I

44.    Western World adopts and repeats the allegations of Paragraphs 1 through 43 as and for Paragraph 44 hereof and as though the same were fully set forth herein.

Answer:  Selective adopts and repeats its answer to paragraphs 1 through 43 as its answer to this paragraph 44 as though fully set forth herein.

45.    The Steidl and Whitlock lawsuits allege a single tortuous act continuing in successive policy periods insured by Western World, Selective and Monticello.

Answer:  The allegations of paragraph 45 consist of conclusions of law to which no response is required, and, to the extent a response is required, are therefore denied.  Selective denies that the allegations of the Steidl and Whitlock lawsuits implicate the Selective Policies and denies that it owes any duty to defend or indemnify the City of Paris, Ray or Parrish for the Steidl and Whitlock litigation.

46.    The risk insured by the Western World policies and triggered by the Steidl and Whitlock lawsuits is also covered by the Selective and Monticello policies.

Answer:  Selective admits that Western World recognizes that the Steidl and Whitlock lawsuits are covered under the Western World policies.  Selective denies that the risk triggered

16

by the Steidl and Whitlock lawsuits is covered by the Selective policies and denies that the

Selective policies cover the Steidl and Whitlock lawsuits and further denies that Selective owes

any duty to defend or indemnify the City of Paris, Ray and Parrish for the Steidl and Whitlock

litigation.  Selective denies all other allegations directed to Selective.  The remaining allegations

of paragraph 46 are directed to parties other than this defendant, and consist of conclusions of

law to which no response is required and, to the extent a response is required, are denied upon

lack of knowledge or information sufficient to form a belief as to the truth of those allegations.

47.    The Selective and Monticello policies provide primary coverage for the defense

of the City of Paris, Parrish and Ray in the Steidl and Whitlock lawsuits.

Answer:  Selective denies the allegations of paragraph 47 as they relate to Selective.

Selective further denies that the Steidl and Whitlock lawsuits are covered by the Selective

policies and denies that Selective owes any duty to defend or indemnify the City of Paris, Ray

and Parrish for the Steidl and Whitlock litigation.  Selective denies all other allegations directed

to Selective.  The remaining allegations of paragraph 47 constitute conclusions of law that are

directed to Monticello, and Selective is without knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 47 that are directed against Monticello, and

therefore denies the same.

48.    The Western World policies provide excess coverage over the Selective and

Monticello policies for the defense of the City of Paris, Parrish and Ray in the Steidl and

Whitlock lawsuits.

Answer:  Selective denies the allegations of paragraph 48 as they relate to Selective.

Selective further denies that the Steidl and Whitlock lawsuits are covered by the Selective

policies and denies that Selective owes any duty to defend or indemnify the City of Paris, Ray

and Parrish for the Steidl and Whitlock litigation.  Selective denies all other allegations directed to Selective.  The remaining allegations of paragraph 48 constitute conclusions of law directed to Monticello, of which Selective is without knowledge or information sufficient to form a belief as to the truth of those allegations, and Selective therefore denies the same.

49.    By agreeing to fund independent counsel for the City of Paris, Parrish and Ray to defend the Steidl lawsuit, Selective and Monticello agreed to pay all defense costs, not just the defense costs arising out of damages that occurred during the Selective or Monticello policy periods.

Answer:  Selective denies the allegations of paragraph 49 as they relate to Selective. Selective further denies that the Steidl and Whitlock lawsuits are covered by the Selective policies and denies that Selective owes any duty to defend or indemnify the City of Paris, Ray and Parrish for the Steidl and Whitlock litigation.  As for those allegations of paragraph 49 that are directed against Monticello, Selective states that it is without knowledge or information sufficient to form a belief as to the truth of those allegations, and Selective therefore denies the same.

50.    Western World does not seek to abrogate its obligations to the City of Paris, Parrish or Ray upon exhaustion of the limits of liability under the Selective and Monticello policies, except as previously set forth in its reservation of rights letter.

Answer:  Selective admits that Western World  recognizes it is obligated to provide defense and indemnity to the City of Paris, Parris and Ray for the Steidl and Whitlock litigation. Selective denies those allegations of paragraph 50 as they relate to Selective.  Selective further denies that the Steidl and Whitlock lawsuits are covered by the Selective policies and denies that Selective owes any duty to defend or indemnify the City of Paris, Ray and Parrish for the Steidl

18

and Whitlock litigation. Selective states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining  allegations of paragraph 50, and Selective therefore denies the same.

51.    The above contentions of Western World are, on information and belief, denied by Selective and Monticello, which, in turn, contend that Western World owes primary coverage for the Steidl and Whitlock lawsuits. Western World, in turn, denies the contrary contentions of Selective and Monticello on each of them.

Answer:  Selective admits that Western World owes a duty to defend and indemnify the City of Paris, Ray and Parrish for the Steidl and Whitlock lawsuits and denies that Western World policies provide excess coverage over the Selective policies.  Selective denies it owes any obligation to defend or indemnify the City of Paris, Ray and Parrish for the Steidl and Whitlock lawsuits, denies that the Steidl and Whitlock lawsuits are covered under the Selective policies, and denies all allegations of paragraph 51 that are directed to Selective.  Selective lacks information and knowledge sufficient to form a belief as to those allegations of paragraph 51 that are directed to Monticello and therefore denies the same.

WHEREFORE, Selective denies that Western World is entitled to any relief whatsoever, and prays that this Court enter judgment against Western World and in its favor, with costs assessed for Selective and that this Court dismiss Western World's Complaint with prejudice.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Western World complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Some or all of Western World's claims may be barred in whole or in part by the doctrine of unclean hands.

### Third Affirmative Defense

Western World's claims against Selective are barred and judgment should be entered for Selective and against Western World because Selective has no duty to defend Ray, Parrish and the City of Paris for the underlying Steidl and Whitlock Lawsuits under the Police Professional Liability Coverage upon which Western World bases its claim, for one or more of the following reasons:

a.    Parrish and Ray are not "insureds";

b.    the Steidl and Whitlock lawsuits do not fall within the scope of coverage afforded under Coverage A, and so do not trigger coverage under Coverage A because, among other reasons (i) they do not allege "bodily injury" or "property damage" as those terms are defined; (ii) they do not allege "bodily injury" or "property damage" which occur during the policy period; (iii) the Steidl Lawsuit does not allege "bodily injury" or "property damage" caused by an "occurrence" (as that term is defined) and arising out of the performance of the insured's law enforcement duties.

c.    The Steidl and Whitlock lawsuits do not fall within the scope of coverage afforded under Coverage B and so do not trigger coverage under Coverage B, because, among other reasons (i) they do not allege "personal injury" as that term is defined; (ii) they do not allege "personal injury" committed during the policy period and arising out of the conduct of law enforcement

activities; (iii) they do not allege an offense committed in the regular course of duty by the insured.

    d.      Coverage is excluded by Exclusions f, g, i and l of Coverage A;

    e.      Coverage is excluded by Exclusions a(1) through (4), e, and g.

    f.      Because there is no duty to defend under the Selective Policies, there is no duty indemnify Ray, Parrish and the City of Paris with respect to the Steidl and Whitlock Lawsuits.

### Fourth Affirmative Defense

Western World cannot meet its burden of proving that its policies provide coverage that is excess of the Selective policies.

### Fifth Affirmative Defense

Selective's obligations, if any, are subject to the terms, conditions and exclusions of the Selective policies.

WHEREFORE, Selective respectfully requests that this Court enter judgment for it and against Western World, that this Court dismiss with prejudice Western World's Complaint, and award Selective costs, and for such other and further relief as this Court deems just.

### COUNTER-CLAIM FOR DECLARATORY RELIEF

The Defendant, Counter-Plaintiff, Selective, for its Counter-Claim against Western World, states:

1.      Selective repeats and realleges each of its Affirmative Defenses to the Western World Complaint, which are incorporated herein.

2.      On or about May 27, 2005, a Complaint was filed in the United States District Court for the Central District of Illinois, Urbana Division, by Steidl against several defendants,

including Ray, Parrish and the City of Paris. Said case is styled <u>Gordon Randy Steidl, Plaintiff</u> <u>v. City of Paris, et al., Defendants,</u> Case Number 05-CV-02127 (hereinafter "the Steidl Lawsuit").

3.       On or about February 27, 2008, a Complaint was filed in the United States District Court for the Central District of Illinois, Urbana Division, by Whitlock against several defendants, including Ray, Parrish and the City of Paris. Said case is styled <u>Herbert Whitlock,</u> <u>Plaintiff, vs. City of Paris, et al., Defendants,</u> Case Number 08-CV-02055 (hereinafter "the Whitlock Lawsuit").

4.       Plaintiff, Selective, issued Commercial Policies of Insurance to the City of Paris Selective, Policy No. S1698558, which contained a Police Professional Liability Coverage Form, for the following Policy Periods: December 27, 1999 to December 27, 2000; December 27, 2000 to December 27, 2001; December 27, 2001 to December 2002; December 27, 2002 to December 27, 2003; December 27, 2003 to December 27, 2004; December 27, 2004 to December 27, 2005; December 27, 2005 to December 27, 2006; and December 27, 2006 to December 27, 2007. Selective also issued to the City of Paris a Police Professional Liability Policy number S1319297 for the December 27, 1999 to December 27, 2000 policy period. (The foregoing policies shall be collectively referred to herein as the "Selective Policies").

5.       The City of Paris tendered the Steidl Lawsuit to Selective for defense and indemnity.

6.       The City of Paris also tendered the Whitlock Lawsuit to Selective for defense and indemnity.

7.       Ray and Parrish were not employees of the City of Paris at the inception of or during the policy period of any of the Selective Policies.

8.      Ray and Parrish were not employees of the City of Paris from December 27, 1999 to the present.

9.      Selective has denied defense and indemnity to Ray and Parrish for the Steidl and Whitlock litigation as they were not employees of the City of Paris at the inception of or during the policy period of any of the Selective Policies, and thus are not insureds under any of the Selective Policies.

10.     Selective has advanced and has agreed to advance payment of defense costs to Ray and Parrish subject to a reservation of rights.

11.     Selective, while defending the City of Paris in the Steidl Lawsuit under a reservation of rights, has denied and continues to deny that it owes a duty to defend or indemnify the City of Paris in the Steidl Lawsuit under the Selective Policies.

12.     Selective, while defending the City of Paris in the Whitlock Lawsuit under a reservation of rights, has denied and continues to deny that it owes a duty to defend or indemnify the City of Paris in the Whitlock Lawsuit under the Selective Policies.

13.     Western World has alleged in paragraphs 33 through 36 of its Complaint that it issued certain Law Enforcement Officers Liability insurance policies to the City of Paris, Illinois, Paris Police Department.

14.     The City of Paris, Parrish and Ray have tendered the Steidl and Whitlock lawsuits to Western World for coverage and defense.

15.     Monticello also issued policies of insurance to the City of Paris, under which the City of Paris sought coverage and defense for the Steidl and Whitlock lawsuits.

16.     Western World agreed to share equally with Selective and Monticello the cost of defending the Steidl and Whitlock lawsuits.

17. Western World defended and paid a portion of the defense costs incurred by the City of Paris, Ray and Parrish in defense of the Steidl litigation until April 1, 2007, at which time it refused to continue defending and refused to continue making any such payment.

18. Western World acknowledges that it owes a defense to the City of Paris, Ray and Parris for the Steidl and Whitlock litigation, but refuses to provide such a defense or pay any defense costs until the limits of liability of the Selective policy are exhausted.

19. Selective disputes this position, states that it owes no duty to defend the Steidl and Whitlock litigation, and, hence, has no duty to indemnify those lawsuits, for the reasons stated in the Complaint it filed in the United States District Court for the Central District of Illinois, Case Number 07-CV-02224, captioned *Selective Insurance Company of South Carolina v. City of Paris, et al.*, which is incorporated herein by reference, and for the reasons stated in its affirmative defenses to this litigation, which are also incorporated herein.

20. Western World owes an immediate duty to defend the Steidl and Whitlock litigation without regard to the exhaustion of the limit of liability of the Selective Policy.

21. Western World, in abrogation of its defense obligation, has refused to defend the Steidl and Whitlock litigation, to the damage of Selective, which has paid a portion of the defense costs owed by Western World subject to a reservation of its rights, remedies and defenses.

22. By reason of the foregoing, an actual and justiciable controversy exists between Selective and Western World which may be determined by a judgment or order of this Court, and this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the Western World and Selective Policies and to

adjudicate the final rights of all parties and give such other and further relief as may be necessary to enforce the same.

WHEREFORE, the Counter-Plaintiff, Selective, prays that this Honorable Court enter judgment in its favor finding and declaring the rights of the parties as follows:

    i.   That Selective owes no duty to defend or indemnify the City of Paris, Ray and Parrish for the Steidl and Whitlock litigation;

    ii.   That Western World is obligated to defend the City of Paris, Ray and Parrish and pay the defense costs they incur in the Steidl and Whitlock litigation from the date those lawsuits were filed;

    iii.   That Western World's defense obligation exists irrespective of the exhaustion or depletion of the policy limit of any Selective policy;

    iv.   That Western World is obligated to reimburse Selective for one-half of the defense costs that were paid by Selective subject to a full reservation of rights from April 1, 2007 until this Court determines that Selective owes no defense obligation;

    v.   That, pleading solely in the alternative and without any admission being made, if the Court determines that Selective owes a defense obligation, that this Court find and declare that Western World is obligated to reimburse Selective for one-half of the defense costs that were paid by Selective subject to a full reservation of rights from April 1, 2007 until such ruling, and that Western World is obligated to pay an equal share of all defense costs following such ruling;

    vi.   For such other relief as is right and just.

Dated: July 11, 2008                Respectfully submitted,

                                    Selective Insurance Company of South Carolina

                                    By: __/s/ Nancy K. Tordai_____
                                            One of its counsel


Of Counsel:

Nancy K. Tordai (Ill. Bar. No. 06182953)
Hanson Peters Nye
1000 Hart Road, Suite 300
Barrington, Illinois 60010
Telephone:  (847)277-9988
Facsimile:  (847)277-7339
Email:  nancytordai@hpnlaw.com

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned attorney hereby certifies that on the 11th day of July, 2008, she electronically filed with the Clerk of the Court using the CM/ECF system, the aforesaid **<u>ANSWER AND COUNTER-CLAIM TO THE COMPLAINT OF WESTERN WORLD</u>**, which will send a notice of electronic filing to the appropriate parties in this matter.

Dated this 11th day of July, 2008

                                         **<u>/s/Nancy K. Tordai</u>**
                                         Nancy K. Tordai (Bar Number 06182953)
                                         Attorney for Defendant, Selective Insurance
                                         Company of South Carolina
                                         Hanson Peters Nye
                                         1000 Hart Road, Suite 300
                                         Barrington, Illinois 60010
                                         Telephone: (847)277-8104
                                         Fax:  (847)277-7339
                                         E-mail:  nancytordai@hpnlaw.com